# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### DANVILLE DIVISION

| | | |
|---|---|---|
| JAMES T. LUTHER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:13-cv-00072 |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, N.A., and | ) | By: Michael F. Urbanski |
| ATLANTIC LAW GROUP, LLC, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on defendants' motion to dismiss plaintiff's amended complaint for failure to state a claim. (Dkt. # 44.) For the reasons set forth below, the motion will be granted in part, converted into a motion for summary judgment in part, and referred to the magistrate judge for further proceedings.

### I.

This is Luther's fourth attempt to state a valid claim against defendant Wells Fargo Bank, N.A., in an effort to avoid foreclosure of his Fieldale, Virginia home. Luther filed his first complaint against Wells Fargo in December 2011,[1] alleging fraud and violations of the Truth in Lending Act (TILA) and the Real Estate Settlement and Procedures Act (RESPA). See No. 4:11cv00057, Dkt. # 3. The United States Magistrate Judge, to whom the matter had been referred, determined that Luther's complaint failed to state any cause of action upon which relief could be granted and gave Luther leave to amend. Luther filed an amended complaint on May 24, 2012, further detailing his fraud, TILA and RESPA claims. See No. 4:11cv00057, Dkt. # 31. Finding once again that Luther

---

[1] In connection with this complaint, Luther moved for a temporary restraining order to prevent the foreclosure of his property. Although that motion was denied by the court, Wells Fargo agreed to a temporary cessation of foreclosure proceedings in order to evaluate Luther's claims. See No. 4:11cv00057, Dkt. # 5, 12, 13.

failed to state a valid claim for relief, the court dismissed Luther's action with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by Order entered September 25, 2012.

Over a year later, faced with the imminent foreclosure of his home, Luther filed the instant action against Wells Fargo, also naming Atlantic Law Group, LLP as a defendant.[2] In his complaint, Luther raised allegations of fraud, mail fraud, wrongful foreclosure, and violations of the Fair Debt Collection Practices Act (FDCPA). Upon the defendants' motion, and at the recommendation of the magistrate judge, the court dismissed the complaint pursuant to Rule 12(b)(6) and once again gave Luther an opportunity to cure the deficiencies in his complaint. On August 12, 2014, Luther filed an amended complaint in which he raises seven claims. Count One seeks declaratory relief that "Defendant willfully contracted with Plaintiff's unlimited power of attorney." Count Two seeks declaratory relief that "Plaintiff signed agreement that Defendant would keep note in local branch office," which both parties had agreed "would be good for the community." Count Three asks the court to "vitilate [sic] all agreements and contracts with Defendant from the beginning," and seeks the return of all notes and payments made by Luther. Count Four alleges breach of good faith and fair dealing. Count Five alleges breach of fiduciary duty. Count Six alleges simply that Luther has been harmed in various ways, and Count Seven alleges defendants "misinformed the court on a crucial fact in this case." Defendants have moved to dismiss the amended complaint under Rule 12(b)(6).

## II.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a dismissal when a plaintiff fails "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its

---

[2] Luther again sought to enjoin the imminent foreclosure of his home, and Wells Fargo voluntarily placed the foreclosure sale on hold pending resolution of this litigation. See Dkt. # 2, 9.

face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

A court should construe factual allegations in the nonmoving party's favor and will treat them as true but is "not so bound with respect to [the complaint's] legal conclusions." Dist. 28, United Mine Workers, Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085–86 (4th Cir. 1979). Indeed, a court will accept neither "legal conclusions drawn from the facts" nor "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Only after a claim is stated adequately may it then "be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 546.

Because Luther is proceeding pro se, his pleadings must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). "While pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" Weller v. Dep't of Soc. Servs. for City of Baltimore, 901 F.2d 387, 391 (4th Cir. 1990) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985)). Indeed, "[t]he 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may be properly addressed." Id.

**III.**[3]

**A.**

Counts One and Two of Luther's amended complaint seek declaratory relief. Specifically, in Count One, Luther asserts that the "Defendant willfully contracted with Plaintiff's unlimited power of attorney and Plaintiff requests the court order declaratory relief in this matter." Am. Compl., Dkt. # 40, at 4. In Count Two, Luther claims that "Plaintiff signed [an] agreement that Defendant would keep note in local branch office," which both parties had agreed "would be good for the community." Id. Luther avers that "[n]otes have been sold mutiple [sic] times by notice given to Plaintiff," resulting in breach of contract and entitling Luther to declaratory relief. Id.

"[A] federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essential elements are met: (1) the complaint alleges an 'actual controversy' between the parties 'of sufficient immediacy and reality to warrant issuance of a declaratory judgment;' (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004). Although defendants concede the court has an independent basis for jurisdiction over the parties in this matter, see Defs.' Mot. to Dismiss Br., Dkt. # 45, at 5, there is no actual controversy here. An actual controversy exists when "the facts alleged . . . show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant issuance of a declaratory judgment." Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941). With respect to Count One,

---

[3] The court notes at the outset that while Luther names both Wells Fargo Bank, N.A. and Atlantic Law Group, LLC as defendants in his amended complaint, he refers to "defendant" in the singular throughout and his allegations appear to concern only Wells Fargo.

Luther appears to allege that by not responding to his Qualified Written Request,[4] Wells Fargo "willfully agreed to the provision of Plaintiff's Power of Attorney." Am. Compl., Dkt. # 40, at 2. He fails to explain what authority this power of attorney gave him, although he seems to suggest it somehow required Wells Fargo to release his deed of trust and clear title. See Am. Compl., Dkt. # 40, at 2-3. In any event, Virginia law requires a principal to sign a power of attorney. Va. Code Ann. § 64.2-1603. Luther has neither attached a valid, signed Power of Attorney to his amended complaint nor alleged that either defendant ever signed such a document. Accordingly, Luther fails to allege the existence of an actual controversy and fails to state a claim for which relief can be granted in Count One.

In Count Two, Luther alleges he "signed [an] agreement that Defendant would keep note in local branch office." Am. Compl., Dkt. # 40, at 4. Because the "[n]otes have been sold multiple [sic] times," Luther claims defendants breached the parties' contract. The three elements required to establish breach of contract under Virginia law are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Ulloa v. QSP, Inc., 271 Va. 72, 79, 624 S.E.2d 43, 48 (2006). Luther did not attach the agreement to which he refers to his amended complaint, and his allegation that *he* signed an agreement is insufficient to establish the existence of a legally enforceable contract. "For a contract to be enforceable, 'there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances.'" Cyberlock Consulting, Inc. v. Information Experts, Inc., 876 F. Supp. 2d 672, 678 (E.D. Va. 2012) (citing Allen v. Aetna Cas. & Sur. Co., 222 Va. 361, 364, 281 S.E.2d 818 (1981)). Thus, there can be no breach of contract on the grounds alleged and no actual controversy requiring declaratory relief.

---

[4] In his first lawsuit, Luther alleged that Wells Fargo failed to respond to two letters he claimed were Qualified Written Requests, in violation of the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2605(e)(1)(A). This claim was dismissed with prejudice. See No. 4:11cv00057, Dkt. # 43, 45.

For these reasons, defendants' motion to dismiss will be granted as to Counts One and Two.

**B.**

In his third count, Luther requests that the court "vitiate [sic] all agreements and contracts with Defendant" as well as return all notes, payments, and proceeds involving the note. Am. Compl, Dkt. # 40, at 4. By way of explanation, Luther references defendants' failure "to keep notes locally" and the fact that Wells Fargo "laundered billions and paid hundreds of millions in fines to the federal government." Id.

The court construes this count as a request to vitiate, or rescind, all contracts Luther has with defendants. A court may rescind a contract under Virginia law as a result of a breach of contract that is "of such substantial character as to defeat the object of the parties in making the contract." Sternheimer v. Sternheimer, 208 Va. 89, 97–98, 155 S.E.2d 41, 47 (1967). As discussed supra, Luther fails to plead the existence of any type of legally enforceable contract to "keep notes locally." As to this claim, defendants' motion to dismiss will be granted.

Although he does not raise these allegations specifically with respect to Count Three, Luther asserts in his statement of facts that:

> On February 10, 2010, the Defendant received credit in the form of a check for $127,150.20 from the Plaintiff. The credit was accepted by Defendant. The credit was accepted by Defendant. The Defendant's internet banking site recorded a full satisfaction of debt and removal of account #[xxxxxxxxxxx]3839 and the Defendant's phone based customer care also reported the same findings. After 4-6 weeks of waiting for a release of the lien to be delivered to his address, Plaintiff went into local Bassett branch and asked for the reason as to why Plaintiff had not received the cleared title from Defendant. Plaintiff was informed that there was a $30 fee that needed to be paid to release the lien. The customer care agent went to work to get the liens released but informed Plaintiff after a few minutes of waiting that there was a problem, and she needed to call someone within the bank's organization. After a few minutes on the phone, the agent came back with the news that they would not release Plaintiff's loan and were keeping Plaintiff's check. Plaintiff asked for the check and was informed that it was being held and would not be released.

6

Am. Compl., Dkt. # 40, at 1-2. This is the principal factual allegation raised in Luther's amended complaint.[5] Thus, the court construes Count Three as including a request to rescind Luther's loan agreements[6] with Wells Fargo based on this alleged breach.

This is the first time in any of Luther's four iterations of a complaint against Wells Fargo that Luther has alleged he paid his debt in full on February 10, 2010. Luther initially brought this allegation to the court's attention in his objections to the magistrate judge's report and recommendation in this case. Pl.'s Obj., Dkt. # 32, at 2, Ex. 1. There, Luther pointed to what appears to be a computer print-out,[7] which lists a "Payment" on 2/10/10 of $127,150.20. Id. at Ex. 1. The following line of the print-out, however, shows a "Pay Rev[ersal]" dated 2/10/10 in the same amount. Id. In its July 24, 2014 Memorandum Opinion, the court declined to consider this allegation because it was not raised in Luther's complaint but granted Luther leave to amend. Mem. Op., Dkt. # 36, at 5-6. As Luther included this allegation in his amended complaint, this issue is now properly before the court.

In response to Luther's allegation and in support of their motion to dismiss, defendants provide the court with a declaration from Denise K. Politte, Vice President of Loan Documentation with Wells Fargo. Defs.' Mot. to Dismiss Br., Dkt. # 45, at Ex. A. Luther, in turn, attaches several accounts statements, as well as a document entitled "Declaratory Notice of Default," to his response to defendants' brief.

"Pursuant to Rule 12(d), if matters outside the pleadings are submitted in conjunction with, or in opposition to, a 12(b)(6) motion, the court must either exclude such materials from

---

[5] Indeed, the bedrock of each of Luther's prior complaints is his insistence that he does not owe Wells Fargo any debt and defendants are unlawfully foreclosing on his property.

[6] The note evidencing the debt at issue is attached to defendants' brief in support of their motion to dismiss the original complaint in this case. See Dkt. # 8, at Ex. A.

[7] This document lacks any indicia whatsoever to explain what the document is or from where it came. In their response to Luther's objections to the report and recommendation, defendants explained that this is "a document provided to [Luther] by Wells Fargo in its Rule 26(a) initial disclosures," and that it "is one page of [a] multi-page statement provided to the Plaintiff and is not a complete record." Defs.' Resp. to Objections, Dkt. # 34, at 4.

consideration or convert the motion into a motion for summary judgment." Potter v. SunTrust, No. 3:14-CV-436, 2014 WL 5410634, at *3 (E.D. Va. Oct. 23, 2014). As both parties have submitted materials outside the pleadings and received notice[8] that in such circumstances the court may convert a motion to dismiss into a motion for summary judgment, the court finds it appropriate to convert the motion into a motion for summary judgment. See Williams v. Gyrus ACMI, Inc., 790 F. Supp. 2d 410, 417 (D. Md. 2011) ("A motion to dismiss may be treated as a motion for summary judgment so long as there is notice to the parties 'and "a reasonable opportunity to present all material made pertinent to such a motion by Rule 56."'" (quoting Finely Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp., 109 F.3d 993, 996 (4th Cir. 1997) (quoting Fed. R. Civ. P. 12(b)(6)))).

In her declaration, Denise K. Politte attests that Luther's mortgage loan with Wells Fargo "has never been paid in full and currently has an unpaid principal balance due of $125,712.63," and that "[t]he account is paid up to May 2011, with the last payment received on October 27, 2011." Defs.' Mot. to Dismiss Br., Dkt. # 45, at Ex. A. Luther contests this, however, asserting that Wells Fargo accepted a check in the amount of $127,150.20[9] from him on February 10, 2010, recorded a full satisfaction of debt as indicated on both its internet banking site and its telephonic customer care line, and failed to clear title to Luther's property or give back his check. As defendants point out, Luther's allegations are curious in light of the fact that he admits he continued making payments to Wells Fargo after February 10, 2010, the date he claims to have paid his loan off in full.[10] It is equally puzzling that Luther filed three previous complaints against Wells Fargo concerning his mortgage loan and failed to allege specifically that he satisfied his debt by tendering a $127,150.20 check on February 10, 2010. But to accept Wells Fargo's representation that Luther is in arrears on

---

[8] A Roseboro notice was issued in this case on September 16, 2014. Dkt. # 46; see Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).
[9] The court assumes, without deciding, that at the time of the alleged payment $127,150.20 would have been sufficient to pay off the balance of the loan.
[10] Luther explains that "[i]t would have been too much to lose his credit and to lose his home and property," so he "did continue to make payments to Wells Fargo." Pl.'s Resp. Br., Dkt. # 47, at 3.

his mortgage over Luther's claim that he paid (or at least attempted to pay) the entirety of the loan balance requires the court to make a credibility determination it simply cannot make at this stage of the proceedings. Wells Fargo has done little to explain the computer print-out showing a "Payment" in the amount of $127,150.20 on 2/10/10. See Pl.'s Obj., Dkt. # 32, at Ex. 1. It states merely that this document is part of a multi-page statement and is not a complete record,[11] and that the line on the document showing "Payment Rev[ersal]" on the same date and in the same amount makes clear Luther's loan is still due and owing. Defs.' Resp. to Obj., Dkt. # 34, at 4. Defendants fail to elucidate why the document shows a $127,150.20 payment in the first place.

Defendants urge the court to "see the Plaintiff's allegations for what they really are—a disingenuous and misleading attempt to delay the inevitable foreclosure of his property." Defs.' Reply Br., Dkt. # 48, at 3. To be sure, there is some incongruity in Luther's allegations concerning his home loan. However, mindful of the fact that Luther is proceeding pro se, the court is constrained to find at this stage of the proceedings that further evidence of the payment history of Luther's loan is necessary to determine whether summary judgment is appropriate. As such, this matter will be referred to the magistrate judge for an evidentiary hearing on the limited issue of whether Wells Fargo breached its contract with Luther by accepting full payment on the loan and failing to release the deed of trust.

## C.

Luther's fourth cause of action alleges that defendants breached the covenant of good faith and fair dealing by: (1) not responding to Luther's communications; (2) removing notes from the local Bassett Wells Fargo branch; (3) not complying with the power of attorney; and (4) "for keeping Plaintiff's check after it was accepted and refused to return said check when requested." Am. Compl., Dkt. # 40, at 4. In Virginia, every contract carries an implied covenant of good faith and

---

[11] Wells Fargo has not provided the court with a complete copy of this statement.

fair dealing. <u>Eplus Tech., Inc. v. Nat'l R.R. Passenger Corp.</u>, 407 F. Supp. 2d 758, 762 (E.D. Va. 2005) (citing <u>Va. Vermiculite, Ltd. v. W.R. Grace & Co.</u>, 156 F.3d 535, 542 (4th Cir. 1998)). However, a claim for breach of that covenant is not an independent cause of action; it is a claim for breach of contract. <u>Rogers v. Deane</u>, 992 F. Supp. 621, 633 (E.D. Va. 2014) (citing <u>Eplus Tech</u>, 407 F. Supp. 2d at 762). Luther has not stated a valid claim for breach of contract arising out of (1) any failure by Wells Fargo to respond; (2) the location of any note; or (3) a power of attorney. Thus, there can be no breach of an implied covenant of good faith and fair dealing for these claims, and the defendants' motion to dismiss will be granted as to them.

As discussed in detail <u>supra</u>, however, an issue remains as to whether Luther can establish Wells Fargo breached the loan agreement by accepting a check from Luther in the full amount owed on the debt and failing to release the deed of trust. Such a breach of contract claim could give rise to a breach of the covenant of good faith and fair dealing. Thus, this count, as it relates to this specific breach of contract allegation, will be referred to the magistrate judge for further evidentiary proceedings as set forth above.

### D.

Luther next alleges a fiduciary relationship existed between him and the defendants because the defendants were "providing banking and financial services for Plaintiff." Am. Compl., Dkt. # 40, at 5. Under Virginia law, "the relationship between a bank and its customer is not one of a fiduciary nature." <u>Wynn v. Wachovia Bank, N.A.</u>, No. 3:09CV136, 2009 WL 1255464, at *4 (E.D. Va. May 6, 2009) (citing <u>Deal's Adm'r v. Merchants' & Mechs. Sav. Bank</u>, 91 S.E.135, 135 (Va. 1917) and <u>Aldrich v. Old Point Nat'l Bank</u>, 35 Va. Cir. 545, 551 (Va. Cir. Ct. 1993) ("There is no common law or statutory support in Virginia which supports the creation of a fiduciary duty between a bank and its debtor/customer when the bank and the customer have a creditor/debtor relationship.")).

Accordingly, no fiduciary duty is created based on the parties' banking relationship. Defendants' motion to dismiss will be granted as to Count Five.

**E.**

In Count Six, Luther claims that his "reputation has been harmed, financial health has been harmed, undue emotional stress, loss of income, direct threats, and harassment." Am. Compl., Dkt. # 40, at 5. While Luther describes how he has been damaged, Count Six does not state any cause of action. Defendants' motion to dismiss will be granted as to Count Six.

**F.**

Finally, Luther alleges in Count Seven that defendants deliberately "misinformed the court on a crucial fact in this case," referring to defendants' brief in opposition to plaintiff's motion to reconsider and response to plaintiff's objections to the report and recommendation. Am. Compl., Dkt. # 40, at 6. Luther does not state how or why this "misinformation" is relevant to this proceeding and, in any event, this allegation does not state a legally cognizable cause of action. Defendants' motion will be granted as to Count Seven.

**IV.**

To be clear, the only claim that survives the 12(b)(6) stage is Luther's claim that Wells Fargo breached its loan agreement, as well as the implied covenant of good faith and fair dealing, by accepting Luther's check for $127,150.20 and failing to clear title. Defendants' motion as to this claim will be converted to a motion for summary judgment and referred to the magistrate judge for further proceedings. All remaining claims raised in Luther's amended complaint will be **DISMISSED with prejudice**.

11

An appropriate Order will be entered.

Entered: November 17, 2014

*Michael F. Urbanski*

Michael F. Urbanski
United States District Judge