IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| JAMES T. LUTHER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:13-cv-72 |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | By: Hon. Robert S. Ballou |
| | ) | United States Magistrate Judge |
| ATLANTIC LAW GROUP, LLC., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This matter was referred to me on the narrow issue of whether Defendant Wells Fargo

Bank, N.A. ("Wells Fargo") breached its contract with Plaintiff James T. Luther ("Luther") by

accepting full payment on his loan and failing to release a deed of trust.  Having conducted an

evidentiary hearing and reviewed the relevant documents, case law, and statutory authority, I

conclude that Luther's claims do not present a genuine issue of material fact, and

**RECOMMEND** that the Court **GRANT** Defendants' Motion for Summary Judgment (Dkt. No.

44), **DISMISS** this case in its entirety with prejudice.

## PROCEDURAL BACKGROUND

This is Luther's fourth attempt in this court to state a claim against Wells Fargo in an

effort to avoid foreclosure of his Fielddale, Virginia home.  The facts are fully set forth in the

court's November 17, 2014 opinion dismissing the majority of Luther's claims in this case. Dkt.

No. 50.  In brief, Luther executed a promissory note ("the note") in favor of Wachovia Bank,

N.A. (a predecessor in interest to Wells Fargo) on February 23, 2007, which is secured by a deed

of trust on the Fielddale property. Dkt. Nos. 8-1, 8-2. Wells Fargo instituted a foreclosure action

1

on the secured property because of Luther's apparent default on the note.[1]  Luther filed multiple

suits in this court *pro se*, in an attempt to avoid foreclosure.  Luther's most recent complaint

against Wells Fargo alleges seven claims, including breach of contract, breach of good faith and

fair dealing and breach of fiduciary duties. Dkt. No. 40.

Defendants moved to dismiss Luther's complaint, and on November 17, 2014, the court

granted Defendants' motion as to the majority of Luther's claims, Dkt. No. 51, but allowed two

of Luther's claims to proceed based upon Luther's allegation that he paid the debt owed to Wells

Fargo in full on February 10, 2010.  Specifically, Luther asserts in the amended complaint:

> On February 10, 2010, the Defendant received credit in the form of a
> check for $127,150.20 from the Plaintiff.  The credit was accepted by
> Defendant.  The Defendant's internet banking site recorded a full
> satisfaction of debt and removal of account #[xxxxxxxxxxx3839], and the
> Defendant's phone based customer care also reported the same findings.
> After 4-6 weeks of waiting for a release of the lien to be delivered to his
> address Plaintiff went into local Bassett branch and asked for the reason as
> to why Plaintiff had not received the clear title from Defendant.  Plaintiff
> was informed that there was a $30 fee that needed to be paid to release the
> lien.  The customer care agent went to work to get the liens released but
> informed Plaintiff after a few minutes of waiting that there was a problem,
> and she needed to call someone within the bank's organization.  After a
> few minutes on the phone, the agent came back with the news that they
> would not release Plaintiff's loan and were keeping Plaintiff's check.
> Plaintiff asked for the check and was informed that it was being held and
> would not be released.

Dkt. No. 40, p. 1–2.  Luther relies upon a print-out provided by Wells Fargo which shows a

partial transaction history on the account. Dkt. No. 32-1. The history shows a "Payment" in the

amount of $127,150.20 on February 10, 2010.  The following line shows a "Pay Rev[ersal]"

dated February 10, 2010 in the same amount. Id.

Wells Fargo submitted the Declaration of Denise K. Politte, Vice President of Loan

Documentation with Wells Fargo, stating that Luther's loan "has never been paid in full and

---

[1] Wells Fargo voluntarily placed the foreclosure sale on hold pending resolution of this litigation. See Dkt. No. 2, 9.

currently has an unpaid principal balance due of $125,712.63." Dkt. No. 45-1.  As both parties

submitted documents outside of the pleadings for consideration by the court, the court converted

this portion of Defendants' motion to dismiss into a motion for summary judgment.  Further

noting that the issue of whether Luther paid his loan in full on February 10, 2010 required the

court to make a credibility determination, the court referred this matter to me for an evidentiary

hearing, and to submit proposed findings of fact and a recommended disposition pursuant to 28

U.S.C. § 636(b)(1)(B). Dkt. No. 50 & 51.

I held a hearing on this issue on January 16, 2015, at which Luther proceeded *pro se*, and

Wells Fargo was represented by counsel.  My findings of fact and recommended disposition are

set forth below.

## STANDARD OF REVIEW

A court may grant a motion for summary judgment only "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits ... show that there

is no genuine issue as to any material fact and that [the moving party] is entitled to a judgment as

a matter of law." Fed. R. Civ. P. 56(c).  A genuine dispute of material fact exists "[w]here the

record taken as a whole could ... lead a rational trier of fact to find for the nonmoving party."

Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks and citing reference

omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When evaluating a

motion under Rule 56, the Court must construe all "facts and inferences to be drawn from the

facts ... in the light most favorable to the non-moving party." Miller v. Leathers, 913 F.2d 1085,

1087 (4th Cir. 1990) (internal quotations omitted).

Here, Luther is proceeding *pro se*, thus his pleadings must be "liberally construed, and a

*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than

3

formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (internal

citation omitted). However, the court is not required to accept a *pro se* plaintiff's contentions as

true, <u>Denton v. Hernandez</u>, 504 U.S. 25, 32 (1992), and cannot ignore a clear failure to allege

facts which set forth a claim cognizable in a federal district court. <u>See</u> <u>Weller v. Dep't of Soc.</u>

<u>Servs.</u>, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district

court should view such *pro se* complaints does not transform the court into an advocate. Only

those questions which are squarely presented to a court may properly be addressed.").

**ANALYSIS**

The only claims remaining in this case are Luther's breach of contract and breach of good

faith and fair dealing claims as they relate to his assertion that Wells Fargo refused to release the

note after he paid in the loan in full on February 10, 2010.  Thus, the sole issue before me is

whether Luther paid the loan in full.  I find that he did not.

The evidence presented at the hearing established that in early 2010, Luther created and

sent a fraudulent check to Wells Fargo for the full amount due on the loan.  Luther testified that

he used check writing software to create a check payable to Wachovia in the amount of

$127,150.20, payable from the "Federal Reserve Bank, San Francisco, CA."[2] <u>See</u> Dkt. No. 55-3.

Luther used a routing number associated with the Federal Reserve Bank of San Francisco and an

account number from an account at a local credit union. Luther believed that the Federal Reserve

Bank would issue credit to Wells Fargo in the amount of this fictitious check. Luther based this

mistaken belief that the Federal Reserve Bank of San Francisco would issue credit to pay off his

loan on the fact that Federal Reserve Chairman Janet Yellen did not object when he wrote her

---

[2] Luther testified that Defendants' Exhibit 1 is an accurate copy of the check he created and sent to Wells Fargo. <u>See</u> Dkt. No. 55-3.

4

that he planned to use the Federal Reserve to discharge his debts.[3] Luther considered Chairman

Yellen's silences as acquiescence, and thus wrote the check believing that the Federal Reserve

Bank had agreed to pay his loan in full.

Luther produced no evidence that he attempted to pay off the loan in full with his own

money. Likewise, Luther did not produce any bank statements showing that $127,150.20 was

deducted from a bank account over which he had control. Indeed, Luther confirmed that on

February 10, 2010 he did not have $127,150.20 to pay to Wells Fargo. Rather, he believed,

based upon the check he created, that the Federal Reserve Bank would transfer the money to

Wells Fargo and his loan would be paid in full. Luther further believed that he would not be

required to reimburse the Federal Reserve Bank for that amount because they are a "private

institution and can issue credit at their will."

At the evidentiary hearing, Luther maintained his position that this foreclosure is

improper because Wells Fargo received credit from the Federal Reserve Bank in the full amount

of the loan, and should have canceled the note. Luther relied upon the print-out provided by

Wells Fargo which lists a "Payment" in the amount of $127,150.20 on February 10, 2010. Dkt.

No. 55-1. Luther had no explanation for the following line of the print-out showing "Pay

Rev[ersal]" dated February 10, 2010 in the same amount. Id. Luther testified that he continued

to make payments on the loan, despite the fact that he believed he had paid the loan in full, while

he began a "writing campaign" with Wells Fargo to figure out why the note had not been

released.

---

[3] Luther testified at the hearing that he wrote letters to "Federal Reserve Chairman Janet Yellen." Luther did not produce those letters at the hearing, or any other documentation reflecting that such letters were sent. Further, the court notes that Janet Yellen was appointed as Chair of the Board of Governors of the Federal Reserve System on February 1, 2014. The Chairman of the Federal Reserve in February 2010 was Ben Bernanke. See http://www.federalreserve.gov/ aboutthefed/bios/board/default.htm

Sheila Sowers, research remediation analyst and Vice President of documentation for Wells Fargo, testified at the evidentiary hearing. Ms. Sowers testified that Wells Fargo did indeed receive a check from Luther in the amount of $127,150.20 on February 10, 2010, and applied the check as a credit to the loan which paid the full balance due at that time. Wells Fargo began the process of creating paperwork to release the lien on Luther's Fieldale property. The check was subsequently returned to Wells Fargo by the Federal Reserve Bank in Atlanta, Georgia as a fraudulent check. See Dkt. No. 55-4. Upon receiving notice that the check was fraudulent, Wells Fargo reversed the credit to the loan in the same amount ($127,150.20), canceled the preparation of documents reflecting satisfaction of the note, and destroyed all paperwork reflecting payment of the loan in full. Ms. Sowers testified that as of the date of the hearing, the loan had not been paid in full.

The evidence presented at the hearing clearly demonstrates that Luther sent Wells Fargo a fraudulent check, expecting Wells Fargo to accept the check as payment of his loan and to release his note. Wells Fargo's documentation reflects that it received the check, and prepared to do as Luther had hoped until the check was returned by the Federal Reserve Bank as fraudulent. Luther offered no documentation or testimony to the contrary. Thus, Luther has not paid his loan in full, and as of January 16, 2015, the loan had an outstanding balance of $155,344.69.

The sole issue pending before the court with regard to Defendants' motion for summary judgment is whether Luther paid the loan in full and thus Wells Fargo breached its contract and breached the duty of good faith and fair dealing by failing to release Luther's note. Construing all facts and inferences to be drawn from the facts in the light most favorable to Luther, I find no genuine issue of material fact as to whether Luther paid off the loan. Thus, I conclude that Wells Fargo is entitled to judgment as a matter of law.

6

## RECOMMENDED DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered, **GRANTING** Defendants' Motion for Summary Judgment (Dkt. No. 44), and **DISMISSING** this case in its entirety with prejudice.

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record and *pro se* parties. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Enter: March 11, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

7