# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### DANVILLE DIVISION

| | | |
|---|---|---|
| JAMES T. LUTHER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:13-cv-00072 |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, N.A., and | ) By: | Michael F. Urbanski |
| ATLANTIC LAW GROUP, LLC, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court for review of the report and recommendation issued by the magistrate judge on March 11, 2015. For the reasons set forth below, the magistrate judge's report (Dkt. # 56) will be **ADOPTED**, defendants' motion to dismiss, which has been converted to a motion for summary judgment, (Dkt. # 44) **GRANTED**, and this case **DISMISSED with prejudice**.

## I.

This is the second lawsuit brought by <u>pro se</u> plaintiff James T. Luther against defendant Wells Fargo Bank, N.A in an ongoing effort to forestall the foreclosure of his home. By Memorandum Opinion and Order entered November 17, 2014,[1] the court dismissed the majority of the claims raised in Luther's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. All that remains of this case are Luther's allegations that Wells Fargo breached its loan agreement and the implied covenant of good faith and fair dealing by accepting payment in full on Luther's loan and then refusing to clear title to his property. Luther claims to have tendered a check for the balance due on his loan, $127,150.20, to Wells Fargo on February 10, 2010. He

---

[1] The facts of this case are set forth in detail in the court's November 17th Memorandum Opinion and will not be repeated here.

maintains that Wells Fargo recorded a full satisfaction of his debt on both its internet banking site and its telephonic customer care line, but failed to release the deed of trust. As evidence at the Rule 12(b)(6) stage, Luther produced a computer print-out showing "Payment" in the amount of $127,150.20 on 2/10/10, which also showed a "Payment Rev[ersal]" on the same date and in the same amount, raising a question of fact as to whether Luther indeed had paid off his loan. See Mem. Op., Dkt. # 50, at 8-9. As to these claims, the court converted Wells Fargo's motion to dismiss into a motion for summary judgment and referred the matter to United States Magistrate Judge Robert S. Ballou pursuant to 28 U.S.C. § 636(b)(1)(B) for an evidentiary hearing on this narrow issue.

Based on the evidence adduced at the January 16, 2015 hearing, the magistrate judge concluded that Luther had not paid off his loan and still owed $155,344.69 to Wells Fargo. Specifically, as set forth in the magistrate judge's report, the evidence established that in early 2010, Luther used check-writing software to create a fraudulent check in the amount of $127,150.20 made payable to Wells Fargo from the "Federal Reserve Bank, San Francisco, CA," employing a routing number associated with the Federal Reserve Bank of San Francisco and an account number from an account at a local credit union. Nevertheless, Luther insisted that Wells Fargo received credit from the Federal Reserve Bank in the amount of his loan and should have cancelled his note. Luther testified he believed the Federal Reserve Bank had agreed to pay his loan in full because he wrote letters to "Federal Reserve Chairman Janet Yellen"[2] stating his intention to use the Federal Reserve to discharge his debts and Yellen did not object. See Report & Recommendation, Dkt. # 56, at 4-5. Luther was unable to produce any evidence to show he paid off his loan with his own legitimate funds and, in fact, admitted that on February 10, 2010 he did not have $127,150.20 with which to pay Wells Fargo.

---

[2] At the time, the Federal Reserve Chairman was Ben Bernanke; Janet Yellen was President of the Federal Reserve Bank of San Francisco.

For its part, Wells Fargo produced testimony from Sheila Sowers, research remediation analyst and Vice President of documentation, which established that Wells Fargo received a check from Luther in the amount of $127,150.20 on February 10, 2010. This amount was credited to Luther's loan balance and Wells Fargo began the process of releasing the lien on his property. The check was subsequently returned as fraudulent, however, at which point Wells Fargo reversed credit to the loan in the same amount, ceased the process of releasing Luther's lien, and destroyed all paperwork reflecting payment of the loan in full. Sowers testified that has of the date of the hearing, the loan had not been paid in full and had an outstanding balance of $155,344.69. As such, the magistrate judge concluded that Wells Fargo is entitled to judgment as a matter of law and recommends the court dismiss this case in its entirety with prejudice. Luther has filed objections to the magistrate judge's report and recommendation.

## II.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir.), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.  The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made.  "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).  "General objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a failure to object, or as a waiver of such objection."  Moon v. BWX Technologies, Inc., 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012) (citing Veney v. Astrue, 539 F.Supp.2d 841, 845 (W.D. Va. 2008)); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

### III.

In his objections,[3] Luther argues without explanation that the court should not consider any evidence presented by Wells Fargo at the January 16th evidentiary hearing because it is untimely, incomplete hearsay that "appears to be fabricated."  Pl.'s Objections, Dkt. # 57, at 1-2.  He further contends that the court should exclude the evidence because "Plaintiff and Defendant are unequal," asserting:

> Plaintiff is a child of The One True God, made in His image, Genesis 1:26.  Plaintiff is a King and Priest of the most high God, Revelations 5:10.  In the jurisdiction of the common law, the Defendant is a stack of documents, a decedent person at best warehoused somewhere in a filing cabinet, that could only arise from some jurisdiction that truly is foreign to Plaintiff.

Id. at 1.  Finding no merit whatsoever to these arguments, the court will overrule them.

Luther further claims that he has been trying for years to receive information related to this case from Wells Fargo but Wells Fargo has failed to communicate with him and explain why the check was accepted and credited to his account but then never returned.  He harps on Wells Fargo's

---

[3]  Given the fact that Luther is proceeding pro se, the court will construe his objections liberally.

lack of service and asserts he "would never have put his home at risk" had he known the check had not in fact been applied to his account. Luther cannot credibly argue that he believed a fraudulent check he created and tendered to Wells Fargo as payment would be accepted in satisfaction of his loan obligations. Indeed, the fact that he continued to make payments on his loan after tendering the check undermines any such belief. <u>See</u> Report & Recommendations, Dkt. # 56, at 5. In any event, Wells Fargo's failure to adequately communicate with Luther has no bearing on the magistrate judge's findings that Luther has not, in fact, paid off his debt to Wells Fargo, nor does any alleged "lack of service" by Wells Fargo amount to an actionable claim.

In an apparent attempt to prove that the check he tendered was valid, Luther attaches to his objections what he claims are his communications with Janet Yellen from 2009 and 2010, in which he states his intent to use the Federal Reserve Bank to discharge his debts. Neither these alleged communications, nor the "Notice of Memorandum of Law— Points and Authorities in Support of International Bill of Exchange," also attached to Luther's objections, establishes that Luther did, in fact, pay off his Wells Fargo loan with legitimate funds.

Luther next points out errors in the magistrate judge's report that need correcting— specifically, that he tendered a check to Wachovia, not Wells Fargo, and that the account number listed on the fraudulent check was Luther's social security number and not an account number from a local credit union. Neither of these facts has any bearing on the magistrate judge's conclusion that Luther has not paid his loan in full.

The remainder of Luther's filing consists of unsubstantiated accusations that Wells Fargo has fabricated evidence in this case. Luther urges that court to take a "closer examination of any and all records" in this case, in light of two recent rulings that purportedly suggest Wells Fargo engaged in forgery and deceptive conduct. Pl.'s Obj., Dkt. # 57, at 3-4. Luther's insistence notwithstanding, there is no indication whatsoever that any of the evidence presented by Wells Fargo at the January

16th evidentiary hearing was fabricated.  Indeed, the only thing the magistrate judge determined to have been fabricated in this case is the check that Luther sent to Wells Fargo in 2010, which he contends satisfied his loan obligations.

In short, the court finds no merit to the arguments raised in Luther's objections.

## IV.

The court has given Luther ample opportunity to state a valid claim for relief against Wells Fargo.  He has failed to do so.  Evidence that Luther created a fraudulent check, purportedly drawn from the Federal Reserve Bank, and tendered that check to Wells Fargo as a loan payment eviscerates his most recent contention that he paid off his loan in full in 2010.  Thus, his claims for breach of contract and breach of the implied covenant of good faith and fair dealing fail as a matter of law.  The court will **ADOPT** the magistrate judge's report and recommendation and **DISMISS** this case, with prejudice, in its entirety.[4]

An appropriate Order will be entered.

Entered:  April 9, 2015

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

---

[4]  As such, plaintiff's "Common Law Motion to Compel Original Notes" (Dkt. # 58) will be **DENIED as moot**.